UNITED STATES *v.* CAMBRIDGE INSTRUMENT CO. (No. 3730)[1]

[1] T. D. 46970.

United States Court of Customs and Patent Appeals, February 12, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Richard E. FitzGibbon* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument December 5, 1933, by Mr. Folks and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (Second Division), holding two importations of accelerometers to be dutiable as machines not specially provided for, under the provisions of paragraph 372 of the Tariff Act of 1922, as to the first importation, and under the provisions of paragraph 372 of the Tariff Act of 1930, as to the second importation.

The first importation was entered on July 31, 1928. The accelerometers in this importation were classified by the collector under paragraph 368 of the Tariff Act of 1922 and assessed with duty at the rate of 45 per centum ad valorem. The second importation was entered on August 25, 1930. The accelerometers in this importation

were classified by the collector under the provisions of paragraph 360 of the Tariff Act of 1930 as scientific or laboratory apparatus and parts thereof, and assessed with duty at the rate of 40 per centum ad valorem.

Appellee duly protested said classifications of the collector. In its protest with respect to the first importation, under the Tariff Act of 1922, appellee made several claims, one of which was that the merchandise was dutiable as machines not specially provided for under paragraph 372 of said tariff act at 30 per centum ad valorem. In its protest with respect to the importation under the Tariff Act of 1930, appellee made two claims, one of which was that the merchandise was dutiable as machines not specially provided for under paragraph 372 of said tariff act at the rate of 27½ per centum ad valorem. As the only claims relied upon by appellee in the Customs Court and in this court are the claims for classification under paragraph 372 of each of said tariff acts, respectively, it is unnecessary to consider other claims of appellee made in its protests.

The Government here admits error by the collector in the classification of the merchandise entered under the Tariff Act of 1930 as scientific and laboratory instruments under the provisions of paragraph 360 of said act, and claims that the said merchandise is dutiable under paragraph 368 of said act.

The issue as to the importation under the Tariff Act of 1922 is whether the merchandise is dutiable under paragraph 368 or under paragraph 372 of said tariff act. The competing provisions of the act affecting this importation, so far as here pertinent, read as follows:

PAR. 368. Clocks and clock movements, * * * and any device or mechanism having an essential operating feature intended for measuring time, distance, or fares, or the flowage of water, gas, electricity, or similar uses, or for regulating or controlling the speed of arbors, drums, disks, or similar uses, or for recording, indicating, or performing any operation or function at a predetermined time or times, any of the foregoing whether wholly or partly complete or knocked down (in which condition they shall be appraised at the valuation of the complete article); cases and casings for clockwork mechanisms imported separately; all the foregoing, 45 per centum ad valorem * * *.

PAR. 372. * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: *Provided*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

The issue as to the importation under the Tariff Act of 1930 is whether the merchandise is dutiable under paragraph 368 or under paragraph 372 of said tariff act. The competing provisions affecting this importation, so far as here pertinent, read as follows:

PAR. 368. (a) Clocks, clock movements, * * * and any mechanism, device, or instrument intended or suitable for measuring time, distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, or for

recording or indicating time, or for recording, indicating, or performing any operation or function at a predetermined time or times, all the above * * *:

(1) If valued at not more than $1.10 each, 55 cents each; valued at more than $1.10 but not more than $2.25 each, $1 each; valued at more than $2.25 but not more than $5 each, $1.50 each; valued at more than $5 but not more than $10 each, $3 each; valued at more than $10 each, $4.50 each;

(2) any of the foregoing shall be subject to an additional duty of 65 per centum ad valorem;

*      *      *      *      *      *      *

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *

The Government in its brief states its contentions as follows:

(1) That the accelerometers herein are especially provided for under the provisions of paragraph 368 of the Tariff Act of 1922 as a mechanical device or mechanism having an essential operating feature intended for measuring time, distance *or similar uses.*

(2) That in regard to the accelerometers imported under the Tariff Act of 1930, the Government does not contend that they are dutiable under the provisions of paragraph 360 as classified by the collector, but does contend that the court should find the said accelerometers to be dutiable under the provisions of paragraph 368 of the Tariff Act of 1930 without affirming the classification of the collector.

The record shows that the accelerometers imported under the Tariff Act of 1922 are used for practical purposes by engineers to determine vertical or horizontal acceleration of any moving body to which they are attached. They are also used to determine vibrations of any moving body. The accelerometers imported under the Tariff Act of 1930 were rotary accelerometers, which are used for determining rotational acceleration and vibration, such as the acceleration or vibration of a motor or engine.

Both classes of accelerometers operate upon the same principle, and for dutiable purposes there is no distinction between them.

The essential parts of the device and method of its operation are concisely stated in appellee's brief as follows:

* * * The accelerometer contains a weight set in a spring. This weight is attached to a stylus which moves up and down when the weight is moved. The stylus presses against a celluloid ribbon. This ribbon can be moved forward by a spring motor and when it is moved forward the stylus will record on the celluloid ribbon the movements of the weight. The spring motor or the celluloid ribbon has nothing whatever to do with the operation of the machine, but is simply an apparatus for recording the movements of the weight. The movement of the weight is what indicates the acceleration. It acts on the principle of a seismograph. This depends upon the physical principle that any mass will tend to stay in a position of rest unless acted upon by a force sufficient to move it. The action of this principle may be readily observed in the instrument at bar. Normally the weight is clamped so that it will not thrash about in the box. If the weight is unclamped and the box is quickly raised or lowered, the weight will be observed to lag behind the movement of the box and the stylus will move up or down. If the box is placed in an automobile, for instance, and

the automobile is accelerated, the weight will lag behind the movement of the car and if the spring motor is wound up and started so that the celluloid ribbon moves, the stylus will record the movement of the weight. If the car remains at the same speed, the weight, of course, will not change its position and if the ribbon is in operation, only a straight line will be recorded by the stylus. If the machine is placed in the automobile vertically and the ribbon is set in motion, it will record the vertical accelerations of the car, that is, its vibration. The more smoothly the car runs, the more nearly will the record approach to a straight line. The movement of the ribbon actuated by the spring motor is simply an accessory recording device. It has nothing whatever to do with the operation of the machine in detecting acceleration or vibration. * * *

The Customs Court in its decision, with respect to the accelerometers involved, stated:

* * * They are not suitable for measuring time, distance, speed, fares, or the flowage of water, gas, or electricity, or for similar uses. They are not suitable for regulating or controlling the speed of arbors, drums, disks, or for recording, indicating, or performing any operation or function at a predetermined time or times. * * *

It is claimed by the Government that they do measure distance or speed, or both, and hence come within the provisions of paragraph 368 of both tariff acts involved.

We think the testimony clearly shows that the device measures neither the distance travelled by, nor the speed of, any body to which it is attached. From the record made by the machine it is impossible to tell the distance covered by the body to which it is attached, or its rate of speed. It does not even measure the extent of the vibrations of such body, or its acceleration in terms of space, except in a relative way. From a reading of the ribbon no one could determine the extent of vibration or acceleration in terms of miles, feet, or inches. We hold that the devices are not suitable for measuring distance or speed, or for similar purposes. We are clear that the trial court was right in holding that the devices are not "suitable for regulating or controlling the speed of arbors, drums, disks, or for recording, indicating, or performing any operation or function at a predetermined time or times." While there is an operating feature of the device that controls or regulates the speed of a drum which is itself a part of the device, the accelerometer as a whole is not suitable for the purposes last above mentioned.

While the trial court, as above indicated, expressly held that the devices are not suitable for regulating the speed of arbors, drums, or disks, it did not expressly hold that the uses to which the devices are put are not similar to the uses above described. We are clear, however, that the uses to which the devices in question are put, and for which they are designed, are not similar to the uses of devices for regulating or controlling the speed of arbors, drums, or disks.

It will be observed that paragraph 368 of the Tariff Act of 1930 requires that the device or mechanism itself be intended or suitable

for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses. As above indicated, the devices at bar do not respond to the requirements of this provision, and we are therefore of the opinion that, insofar as the devices imported under the Tariff Act of 1930 are concerned, the trial court committed no error, and its judgment sustaining appellant's protest No. 484364–G/65447 should be affirmed.

A different question, however, arises with respect to the devices imported under the Tariff Act of 1922, because of the difference in the provisions of paragraph 368 in said tariff acts.

It will be observed that paragraph 368 of the Tariff Act of 1922 provides that "any device or mechanism *having an essential operating feature* intended for   *   *   *   regulating or controlling the speed of arbors, drums, disks   *   *   *" (italics ours) shall be dutiable under that paragraph.

While we agree with the trial court that the accelerometers in question are not suitable for any of the purposes named in paragraph 368 of the Tariff Act of 1922, it is clear that they do contain an essential operating feature for regulating or controlling the speed of the drum which moves the celluloid ribbon beneath the stylus, said drum being a part of the device itself.

Therefore we are of the opinion that, so far as the devices imported under the Tariff Act of 1922 are concerned, their classification is governed by our decision in the case of *Tagliabue Mfg. Co.* v. *United States*, 21 C.C.P.A. (Customs) 221, T.D. 46751, in which the court held, the writer of this opinion dissenting, that a mechanism for moving a disk or chart which was part of the device there involved, and without which a record could not be made of the operation of the device, was classifiable under said paragraph 368 under the provision for "any device or mechanism having an essential operating feature intended for   *   *   *   regulating or controlling the speed of arbors, drums, disks, or similar uses." In its opinion in that case the court said:

*   *   *   The importer further argues that it does not fall under the provision for a mechanism for "regulating or controlling the speed of arbors, drums, disks, or similar uses", inasmuch as it did not "regulate" or "control" anything.

In the last contention we think the importer is in error. The clockwork mechanism in the device is "essential" to the operation of this kind of device and it is an operating feature of the same. We think that it is intended for "regulating or controlling" the speed of the disks or chart upon which the record of the gas content of the boiler is made. The movement of the chart is so timed that there may be determined, from an observation of the same, the exact amount of gas in the flue at a given time of day or night; that is to say, within five minutes of the exact time. The clock moves the chart, and therefore controls or regulates such movement and its speed, so as to make the record on the chart conform with the approximate time when the record was made. One of importer's witnesses

testified to the effect that the clock made the chart move constantly with regularity. The argument that it does not regulate or control the speed of the mechanism seems to us to be tenuous. But, if the words "regulating" and "controlling" are used in such a technical sense as is contended for by appellant, we know of no reason why the term in the same part of the paragraph, "or similar uses", would not aptly apply and bring the apparatus at bar into the provision.

The chart there referred to was in the form of a disk. The spring motor in the device at bar constitutes an operating feature which regulates or controls the speed of a drum, the drum being a part of the device itself and performing the function of moving the celluloid ribbon under the stylus. Inasmuch as the case last cited establishes the construction to be given to said paragraph 368 of the Tariff Act of 1922 in the respects here under consideration, we must likewise hold that the devices here involved, imported under the Tariff Act of 1922, are classifiable under paragraph 368 of said act as falling within the provision for a device or mechanism "having an essential operating feature intended for * * * regulating or controlling the speed of arbors, drums, disks, or similar uses", and therefore the protest of appellant No. 370906–G/23141 should be overruled.

We think it proper to observe that our decision in *Tagliabue Mfg. Co.* v. *United States, supra,* was rendered subsequent to the decision of the trial court in the case before us.

The judgment of the United States Customs Court is *modified.* It is *reversed* as to protest No. 370906–G/23141, involving the importation under the Tariff Act of 1922, and is *affirmed* as to protest No. 484364–G/65447, involving the importation under the Tariff Act of 1930.

Pursuant to the foregoing, the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.